### W. E. & C. L. MOORE vs. TRIEBER AND WIFE.

1. CONSTRUCTION: *Articles of partnership.*

   Under articles of partnership which stipulated that the cash receipts, after deducting one half the profits, are to be paid to one partner, and that the other partners are, at the expiration of the partnership, to take their proportion of the outstanding claims as part of the profits, the latter are not required to take the whole of their profits out of the claims. The last clause of the stipulation relates to such part of the profits as the claims represent.

2. PARTNERSHIP: *Course of dealing in.*

   Where a particular course of dealing is established between partners without objection, their assent thereto will be presumed, and they will be bound by it.

APPEAL from *Phillips* Circuit Court in Chancery.

Hon. W. H. H. CLAYTON, Circuit Judge.

*Tappan, Horner and A. H. Garland,* for the Moores.

*Rose,* for Trieber and wife.

HARRISON, J.:

The plaintiffs, David Trieber and his wife Carrie Trieber, entered into a written contract with the defendants, W. E. & C. L. Moore, grocery merchants, in the city of Helena, for the said

*Vol. xxxi.—8.*

Carrie Trieber, who had a separate estate, to furnish the defendants, with a stock of dry goods, to sell in their store on her and their joint account, and of which they were to have the entire control—the profits from the sale, after the payment of certain expenses, to be equally divided between her and them.

The contract was originally entered into in 1869, and continued from year to year. The last written contract was for continuation of the business from 1st April, 1871, for one year, which was renewed by verbal agreement, on the same terms, from 1st April, 1872, to 1st April, 1873. The important facts of said agreement are as follows:

"The profits arising from the sale of said goods are to be equally divided between the said Carrie Trieber and the said W. E. & C. L. Moore, and all losses from bad debts are to be mutually borne by the parties hereto.

"The cash receipts, after deducting one half of the profits, are to be paid over as she may need them to the said David Trieber as agent of the said Carrie Trieber, * * * and it is further agreed that if this agreement is not renewed at its expiration, then W. E. & C. L. Moore are to take their proportion of the outstanding claims as part of the profits."

A special set of books was kept for the dry goods business, which was kept distinct from the grocery business, and settlements between the parties were made at the end of each year.

It was the habit of defendants, in the course of business, when payments were made on accounts by customers to whom they had made cash advances and sold groceries, as well as dry goods, on credit, to apply them, first to the account for cash advances, then to the account for groceries, and only such remainder as might be to the account for dry goods.

The parties not being able to come to a satisfactory settlement, Trieber and wife brought this suit for an account.

They claim that the payments first mentioned should have been apportioned between the accounts for cash advances, groceries and dry goods, according to their respective amounts; and that, under their construction of the contract, the defendants, for their share of the profits, should take the outstanding claims.

The defendants, on their part, claim that the payments were rightly appropriated, according to the usual custom of merchants in the same kind of business, and that such had been their habit during the whole course of the business between themselves and the plaintiffs, and such appropriations had always been assented to by them without objection.

As shown by the pleadings and evidence, the sales amounted to $47,929.14; the cash received, according to the books, to $30,886.31, and the *pro rata* of the payments applied exclusively to the cash advances and the grocery accounts to $4,865; the profits, if all debts should be collected, to $15,055.51, and there had been paid over to Mrs. Trieber $28,111.10.

Upon the hearing the court held that the *pro rata*, the said sum of $4,865 of the said payments, ought to have been applied to the dry goods account, and also that the defendants should take their profits in the outstanding claims; and, in accordance with such holding, decreed that the defendants should pay Mrs. Trieber $6,202.67, and the claims, when collected should be equally divided between her and them.

The defendants appealed.

There are only two questions to be decided in the case. The first arises upon the construction of the contract—whether the defendants were to take their part of the profits in the outstanding claims, or, in other words, to pay over to Mrs. Trieber the cash receipts without deducting their part of the profits?

The contract clearly admits of no such construction. It expressly says, "The cash receipts, *after deducting one half of the*

*profits*, are to be paid over as she (Mrs. Trieber) may need them," etc.

The stipulation for their taking outstanding claims relates to their profits in the outstanding claims or debts at the close of the business. Its language, in connection with that we have just quoted is very plain. "And it is further agreed that if this agreement *is not renewed at its expiration*, then W. E. & C. L. Moore are to take their proportion of the outstanding claims as part of the profits."

The other question is, whether, on payment on general accounts, the defendants had a right to apply them, first, to the account for cash advances, then to the account for groceries, and lastly, to the account for dry goods.

The defendants attempted to prove a custom among merchants dealing, as they did, in both dry goods and groceries and making advances of cash to their customers, for such appropriation, but the evidence was conflicting and inconclusive. But they proved that such had been their practice during the whole time they and the plaintiffs had been doing business together, and without objection by them. Their assent, therefore, to such appropriation may be presumed, and they should not now be heard to complain.

For greater certainty we have referred the matter to the clerk of this court, as a special master, to take and state the accounts between the parties, in accordance with the conclusions above declared, and he has presented the following, which we find to be correct, and adopt:

| | |
|---|---|
| Amount of cash sales........................ | $30,886 91 |
| Amount of credit sales...................... | 17,042 23 |
| Whole amount of sales...................... | $47,929 14 |

W. E. & C. L. Moore vs. Trieber and Wife.

```
Profit on cash sales.............................$ 9,370 70
Profits on credit sales..........................  5,684 81

Whole profits...................................$15,055 51
Credit sales as above...........................          $17,042 23
Profit on credit sales..........................            5,684 81

Cost on credit sales............................          $11,357 42
W. E. & C. L. Moore,
                    To Carrie Trieber,     CR.        DR.
To cash collected as above......................          $30,886 91
By amount paid Mrs. Trieber.............$28,111 10
By half profit on cash sales.................  4,685 35
                                            ————————— $32,796 45

Overpaid Mrs. Trieber.......................          $ 1,909 54
```

It will be seen from this statement that there remains $11,-357.42, cost of credit sales, which the defendants should account to Mrs. Trieber for, less so much as may be lost without fault on their part; and, if there be any loss, for one half of such loss, and, if all be collected, for one half of the profit thereon; and, further, that instead of being entitled to a decree for $6,207.67, Mrs. Trieber has been overpaid on account of cash receipts $1,909.54.

For the errors thus shown the decree of the court below must be reversed, and, as the assets have been placed in the hands of a receiver, with directions to proceed in the collection of the same, which order has not been appealed from, and it is proba-ble that a considerable portion, if not the whole of the debts, have now been collected, the cause is remanded to it, with in-structions to proceed therein, and to a final decree according to law and as indicated in this opinion.

Decree reversed.

The appellees filed a petition for reconsideration, which was overruled. The point relied on in the motion for reconsideration will appear in the opinion overruling the same, delivered by

HARRISON, J.:

We have carefully considered the motion, filed at a former day of the term, for a rehearing in this case.

The objection urged by the appelles against the opinion we have delivered is, that the appellants were allowed, in the account stated by the special master in chancery of the court, and approved by us, a credit for $3,600, the due bill for that amount dated April 3d, 1872, and which reads thus:

"Received, Helena, April 3d, 1872, of W. E. & C. L. Moore a full settlement of all transactions for the past year, ending March 31st, 1872; and there is due W. E. & C. L. Moore the sum of thirty-six hundred dollars, being their interest in the outstanding debts; also they to have one half the profits of the amounts to be collected.         DAVID TRIEBER, Agt.

"for C. TRIEBER."

It is contended by the appellees that this sum was to be paid out of uncollected debts in the hands of the appellants, but there is no allegation in the complaint, or proof that there were any such outstanding debts in their hands.   The instrument, we think, does not admit of such a construction.   It acknowledges that there had been a full settlement of the whole business of the previous year, and that, upon such settlement, there was found due the appellants $3,600.   The construction placed upon it by the appellees would contradict this plain and direct admission of the settlement, as well as of the amount found due.

The meaning of the instrument is not entirely plain to us, but we think, in view of the peculiar business of the parties and the other facts in the case, that, upon the settlement, the appellants turned over to the appellees a portion of the credits of the concern (the appellees' interest in them being the first cost and one half the profits), which were regarded as perfectly good, which they took as equivalent to cash, and agreed to pay appellants' share of the profits in them.

The instrument must be supposed to have been well understood by the parties. The $3,600 were claimed by the appellees in their answer as a credit on the business of 1872, and in the account made out by them. It was allowed in the account made out by the receiver in the court below, and no exception to it was filed by appellees; and it was proven by the witness Moore, who was the book-keeper, in his answer to the 19th interrogatory by the appellants, which was:

"In the settlement made in April, 1872, between plaintiffs and defendants, were there any balances due from one to the other? If so, what were the balances upon the cash and credit sales, and how were they settled and from whom were they due?" He said: "There was a balance due; there was $3,600; this amount was due from cash sales from the plaintiffs to the defendants, and a due bill executed by the plaintiffs to the defendants;" and in his cross-examination no attempt was made to explain the matter, or show that the instrument had a meaning different from that he gave it, and it was in no way contradicted.

If the appellants were not entitled to this credit we are unable to conceive why no objection was made to it in the court below, when it was distinctly claimed in the appellants' answer, and proof given by them to establish it, or why no proof was offered that there were outstanding debts in the hands of the appellants from which it was to be paid, and no exception to its allowance.

The motion for a rehearing is overruled.